IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL J. MUMMERT,** | Civil No. 1:19-CV-01676 |
| **Plaintiff,** | |
| v. | |
| **RUTTER BROS. DAIRY, INC. and RICKY MILLER,** | |
| **Defendants.** | **Judge Sylvia H. Rambo** |

## MEMORANDUM

Before the court is the motion for summary judgment filed by Defendants Rutter Bros. Dairy, Inc. and Ricky Miller. (Doc. 26.) For the reasons set forth below, the motion will be granted.

### I. BACKGROUND

In May 2000, Plaintiff Michael J. Mummert, who was born April 29, 1955, was hired by Defendant Rutter Bros. Dairy, Inc. ("Rutter's"), a dairy processing plant located in York, Pennsylvania, as a sales representative. (Doc. 28, ¶¶ 1, 2, 7.) Rutter's sales representatives have direct control over service delivery and it is therefore critical that they have a good relationship with their assigned stores' dairy managers, who control the amount of product that is ordered, the location of where the product is displayed, and the speed in which the product will be put on shelves. (*Id.* ¶¶ 4-5, 17.) On the job description for the sales representative position, the first

1

"Specific Responsibility" reads: "Maintains good relations with existing accounts, always acting in a courteous and professional manner." (*Id.* ¶ 6.)

On April 19, 2016, Mummert took an FMLA-protected medical leave of absence following a heart attack and kidney stones. (*Id.* ¶ 15) During Mummert's leave of absence, several of his retail accounts, including Giant Foods and other accounts in the City of York, were handled by his coworker, William Bolden. (*Id.* ¶ 16.)

While Bolden was filling in on the accounts, multiple customers complained to him about Mummert.[1] (*Id.* ¶ 19.) For example, Matthew Dolan, the dairy manager of the Pauline Drive Giant store, complained to Bolden that Mummert tried to dictate to him how to fill his shelves and scolded him for not ordering product correctly. (*Id.* ¶ 20.) According to Bolden, Dolan said that he found Mummert's attitude and demeanor towards him off-putting. (*Id.*) Bolden heard similar complaints from Zack Mundorf, the dairy manager for Giant in West York, who told Bolden that Mummert gave him a hard time about ordering incorrectly and scolded him for the manner in which he stocked shelves. (*Id.* ¶ 21.) Mundorf also told Bolden that when he saw

---

[1] Mummert's response to Defendants' statement of undisputed material facts notes that Boldin was never deposed in this case. Mummert does not, however, cite any rule that would prohibit Defendants from relying on Boldin's affidavit in support of their motion, and the court has no reason to question the veracity of the document. Mummert's response also points out that Boldin's affidavit is not notarized, but a formal affidavit is not required on summary judgment where, as here, a certification submitted as a substitute for an affidavit is subscribed in proper form as true under penalty of perjury. (Doc. 28-3, pp. 1, 4.) *See* Fed. R. Civ. P. 56(c)(4) advisory committee's note (2010); 28 U.S.C.A. § 1746; *see also United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315 (3d Cir. 2019).

Mummert enter the store, he would leave and get out of the way. (*Id.*) Both Mundorf and Dolan reported to Bolden that they felt Mummert was trying to tell them how to do their jobs. (*Id.* ¶ 22)

Bolden heard similar complaints from other customers, including that Mummert was too aggressive and demanding towards them and that he tried to dictate how to do their jobs. (*Id.* ¶ 23.) Bolden was not surprised by the customer feedback. According to Bolden, he considered Mummert to be a bully and frequently observed him criticize others, including Defendant Ricky Miller, another Rutter's employee, who Mummert had claimed was not qualified to be a sales manager. (*Id.* ¶ 24.)

Bolden reported the customer complaints he received to Miller, who supervised the sales representatives and became Mummert's supervisor beginning in May 2016. (*Id.* ¶¶ 25, 27.) Miller in turn advised Todd Rutter, the company's president, about the feedback. According to testimony by Mr. Rutter, Mummert had a "very long" history during his employment of complaining about "everything." (*See id.* ¶ 8; Doc. 28-1, p. 12.) Mr. Rutter testified that despite Mummert's propensity to complain, "we incorrectly made a very bad assumption that Mike was able to not behave like that when he was with customers and clients." (*See* Doc. 28 ¶ 13; Doc. 28-1, p. 12.) According to Mr. Rutter, after Mummert went on leave and an opportunity arose for customers to complain about Mummert, the company "learned

quickly that that was not the case, that the Mike we saw in the office was the same Mike that our customers saw. And that was a problem." (Doc. 28, ¶ 14.)

On or around July 11, 2016, Mummert returned to work from his leave of absence. Upon his return, Mummert was informed by Mr. Rutter and Miller that he was being removed from the Giant account and the York City accounts because of the feedback received from those customers. (*See id.* ¶¶ 32-33; Doc. 29, ¶ 33.) The accounts were reassigned to Bolden. (Doc. 28, ¶ 39.)

On August 12, 2016, Mummert received a performance evaluation from Mr. Rutter and Miller for the first half of 2016. (*Id.* ¶ 40.) The evaluation stated that Mummert had "major issues with the buyer and managers at Giant and dealing with their web system, so the account was taken from him. He should have sensed an issue and suggested a change to us. The relationship issue cost us a lot of sales and potential opportunities in that chain. Some school buyers voiced issues with Mike to us as well and those accounts had to be assigned to a different sales person. It was made very clear to Mike that this is an issue for a sales person and he needs to change his ways." (*Id.* ¶ 41.) It also provided that Mummert "will receive a lot of oversight going forward to ensure that we continue to see the happy, non-complaining, positive attitude, non-gossiping Mike. And if we don't, we will take appropriate actions." (*Id.* ¶ 42.)

Mummert testified that sometime around summer 2016, Rutter's had to deliver tea to a customer and Miller told Mummert that he would have other sales

4

representatives handle the delivery.² Mummert initially testified that Miller "made some reference to too old for this or something to the effect of my health," and "I don't recall if he said you're too old or you don't need this because of your health reasons." Mummert then testified "I knew it was something about old. He said something about being too old" and "The medical condition wasn't brought up." When Mummer was asked, "He said to you, you're too old for this?" he answered, "Or something to that effect." (*See id.* ¶ 74; 28-5, Doc. 28-5, pp. 27-28.)

On October 27, 2016, Mummert was in a Walmart when he felt sweaty and his head began spinning, and he was thereafter taken to the hospital, where he presented with complaints of hot sweats and mild chest pressure. (Doc. 28, ¶ 77, Doc. 29, ¶ 77.) As a result, Mummert missed a day-and-a-half of work. (Doc. 28, ¶ 78.)

On October 31, 2016, Mummert returned to work without any specific restrictions and under medical advice that he could resume normal activities as tolerated. (*Id.* ¶ 79; Doc. 29, ¶ 79.) Mummert testified that on the day of his return, he ran into Mr. Rutter in the parking lot, and Mr. Rutter commented to him, "at least you're standing and walking" or "I see that you're standing and walking." (Doc. 28, ¶ 80.) According to Mummert, he and Mr. Rutter walked into the building together and Mr. Rutter made a "comment about hope it doesn't happen again. Something. I

---

² Defendants' statement of undisputed material facts avers that Mummert testified that the incident occurred several months before his November 2016 suspension and Mummert's response to Defendant's statement of undisputed material facts does not dispute this timing.

knew it was something about hope it doesn't happen again or don't let it happen again." (*See id.*; Doc. 28-5, p. 40.)

On November 4, 2016, Rutter's notified Mummert that he would be suspended for one work week, from November 7 to November 11. (*Id.* ¶ 55.) The decision was made by Miller and Mr. Rutter, in consultation with a human resources representative, who testified that the reason for the suspension was Mummert's negative attitude inside the company and in connection with his accounts. (*See id.* ¶ 56.) The disciplinary notice associated with the suspension provided:

> Mike's ongoing negative attitude is unacceptable. Mike continues to criticize our customers and store managers openly expressing his views. This does not meet the standards of professional etiquette and protocol. These activities negatively impact sales and customer relations, let alone a successful and a professional representative of our Brand. All of these issues were addressed with Mike at his last review and the consequences it could lead to. Mike is not doing what we asked him to. Mike's interaction with our client base and the attitude he is displaying is questionable and we take this as a form of insubordination to follow our guidance.

(*Id.* ¶ 59.)

The disciplinary notice also provided that at the end of the suspension, Mummert would need to convince Miller and human resources that he changed his attitude, including by "shar[ing] with us the tools and skills he has developed to cope with these issues." (*Id.*) Otherwise, the notice stated, Mummert "shall be terminated from his position." (*Id.*)

Miller testified that during Mummert's suspension, he spoke with Gary Lidle, the store manager at the Carlisle Street Weis Market, in order to better understand

prior complaints about Mummert that were made by the store. (*Id.* ¶ 62.) Lidle told Miller that Mummert was difficult to deal with and would not listen to his instructions, such as when he told Mummert to put eggnog on a display shelf in the store and Mummert refused. (*Id.* ¶ 63.)

On November 14, 2016, Rutter's terminated Mummert's employment. (*Id.* ¶ 65.) The decision was made by Miller and approved by Mr. Rutter. (See *id.* ¶ 64; Doc. 28-1, p. 13.) Mummert's termination notice notes his prior removal from the Giant account based on "extremely poor relations with the store and dairy managers and buyers" and states that during Mummert's suspension, "additional information" came to light regarding his relations with customers. (*See id.* ¶ 66; Doc. 28-5, p. 72.) The notice further states: "It has been uncovered that Mike also has very poor relationships with the Weis store managers and dairy managers. Mike has made no effort to establish a relationship with the Weis District and Category managers. Several of the Weis dairy man[a]gers and store managers do not care for him because of the way he acts in their stores and treats them. . . . In general they had no interest in our product line because of the poor sales representation they were receiving from our company. In our opinion, this is why our sales in Weis are on a three year negative trend. . .We cannot have a sales person that has to be removed from accounts for poor performance due to poor relationship skills." (*See* Doc. 28, ¶ 66; Doc. 28-5, p. 72.)

In September 2019, Mummert initiated this action by filing a complaint, which he subsequently amended in January 2020. (Docs. 1, 10.) Count I of the amended complaint alleges violations of the Pennsylvania Human Relations Act ("PHRA") by both Defendants based on age discrimination. Count II alleges violations of the PHRA by both Defendants based on disability discrimination. Count III alleges violations of the PHRA by both Defendants based on retaliation. Count IV alleges violations of the Age Discrimination in Employment Act of 1967 by Rutter's. Count V alleges violations of the Americans with Disability Act ("ADA") by Rutter's based on discrimination. Count VI alleges violations of the ADA by Rutter's based on retaliation. Count VII alleges violations of the Family Medical and Leave Act by Rutter's based on retaliation.

Rutter's and Miller have filed a motion requesting summary judgment on all of Mummert's claims. (Doc. 26.) Mummert filed a brief in opposition and Rutter's and Miller replied. The matter is thus ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable

factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the

evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III. **DISCUSSION**

Under the ADA and PHRA, an employer may not discriminate against employees based on disability. *See* 42 U.S.C. § 12112; 43 Pa. Cons. Stat. § 955. To establish a prima facie claim for discrimination based on disability, the plaintiff must demonstrate that he "(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006). If the plaintiff is able to establish a prima facie claim, the burden shifts to the employer to articulate a legitimate and non-discriminatory reason for the adverse employment action. *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

If the employer meets it burden, the burden shifts back to the plaintiff to show that the employer's reason was pretextual. *Wishkin,* 476 F.3d at 185. In order to demonstrate that the employer's explanation is pretext, the plaintiff must "cast sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication or allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994) (alterations omitted)). The plaintiff can

meet this burden by discrediting the employer's reasons through circumstantial or direct evidence or by adducing evidence that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *Id.*

The ADEA and PHRA also prohibit employers from discriminating against an employee because of age. *See* 29 U.S.C. § 623(a)(1). To prevail on a claim for age discrimination claim under the ADEA or PHRA, the plaintiff must show that his age "actually motivated" or "had a determinative influence on" the employer's adverse employment action. *Fasold v. Just.*, 409 F.3d 178, 183–84 (3d Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)); *see also Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). The plaintiff may satisfy this burden by showing direct evidence of discrimination or by presenting indirect evidence of discrimination that satisfies the *McDonnell Douglas* framework. *Fasold*, 409 F.3d at 184; *see also Evanoski v. United Parcel Serv., Inc.*, 571 F. App'x 92, 95 (3d Cir. 2014). Mummert concedes that he has not presented any direct evidence of age discrimination and that his age and disability discrimination claims should be analyzed pursuant to the *McDonnell Douglas* burden-shifting framework.

Assuming that Mummert has satisfied prima facie claims for disability and age discrimination, Defendants have articulated legitimate and non-discriminatory

reasons for their employment decisions.[3] The record contains overwhelming and consistent evidence that Mummert was suspended, disciplined, and terminated because of complaints Rutter's received by multiple customers. Mummert's employment records and testimony by Miller, Rutter, and Bolden show that in the weeks and months before Mummert's discipline and termination, the company received several complaints from multiple customers about Mummert displaying a negative attitude and having a tendency to dictate to customers how to do their jobs. Mummert does not substantively contest that he was the subject of these complaints, and the record is clear that maintaining good relations with customers is one of the most important roles for Rutter's sales representatives. Defendants have further proffered sufficient evidence that Mummert frequently had a negative attitude towards and complained to colleagues. As such, Defendants have satisfied their burden of articulating a legitimate and non-discrimination reason for Mummert's

---

[3] To the extent Mummert alleges discrimination under the PHRA and ADA based on a failure-to-accommodate theory, he has not made out a prima facie claim. To establish a claim based on failure-to-accommodate under the ADA, a disabled employee must show "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319–20 (3d Cir. 1999). The same standard applies to claims asserted under the PHRA. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010). Here, there is no evidence in the record to suggest that Mummert was disabled and needed an accommodation for a disability upon returning to work from medical leave. Nor is there any evidence to support that Mummert requested an accommodation, let alone an accommodation to which Rutter's refused to respond in good faith. Mummert therefore cannot satisfy any of the elements of a failure-to-accommodate claim.

adverse employment actions, and the burden therefore shifts back to Mummert to demonstrate an issue of fact as to whether Defendants' justifications are pretext.

Mummert attempts to carry his burden by claiming that the record offers "an overall scenario of discrimination that cannot be ignored," but he ultimately fails to offer any persuasive evidence or argument that Defendants used customer and colleague complaints as a pretext for imposing discipline due to his age or disability. For example, Mummert relies heavily on an email from Miller to Mr. Rutter, dated November 4, 2016, the same day that Rutter's suspended Mummert. The subject of the email is "Mike" and its contents read, "Don't forget about the communication about his absence." (Doc. 29-3, p. 50.) While Mummert claims that this was an "outrageous comment" that shows he was punished based on his medical conditions and age, he does not even attempt to explain why the email supports his claims, and as Defendants point out, the context of the email shows that it had nothing to with discrimination. The relevant email chain begins with Miller informing Mr. Rutter that he met with Mummert to inform him of the suspension and that Mummert was gathering some personal things before leaving. (*Id*.) Mr. Rutter responded by telling Miller to come visit him to "vent and exhale" once Mummert left, and it is at that point that Miller replied and told Mr. Rutter not to "forget about the communication about his absence." (*Id*.) Defendants claim that the email was intended as a reminder to Mr. Rutter to send out a department-wide communication that Mummert would be absent from the office over the next ten days. Defendants' interpretation is

13

supported by the surrounding context of the communication, and Mummert offers no reasonable explanation or argument to the contrary. The email thus does not support Mummert's pretext argument.

Mummert's vague testimony regarding alleged comments made by Mr. Rutter and Miller is also insufficient to create an issue of fact as to pretext. With respect to Mummert's parking lot run-in with Mr. Rutter on his first day back from medical leave, Mummert testified that he does not remember specifically what was said during the conversation, but Mr. Rutter's supposed comment—something "about hope it doesn't happen again or don't let it happen again"—appears to be little more than an exchange of pleasantries between colleagues. Further, Mummert's testimony that on one occasion around the summer of 2016, Miller selected other sales representatives to deliver product to a store and "made some reference to too old for this or something to the effect of my health," is almost completely devoid of substance, not to mention divorced from any employment action. Assuming that either piece of testimony would support an inference of age or disability discrimination, neither raises an issue of fact as to whether Defendants' employment decisions were actually based on Mummert's job performance and the complaints Rutter's received from Mummert's customers and colleagues.

Mummert makes other various arguments in passing, but none supports that his claim that Defendants used customer complaints as a pretext for discrimination. For example, Mummert points out that Rutter's never offered him anger

management training prior to imposing discipline, despite it doing so in the past for other employees. But Mummert does not attempt to meaningfully compare his circumstances to those of employees that were offered such training, whom he does not name. It is also entirely unclear what anger management training would have accomplished under the circumstances, as the subject of the complaints about Mummert was his tendency to complain and dictate how customers should do their jobs, not his inability to manage anger.

Further, Mummert argues that the company set him up to fail by refusing to provide him with updated technology and specifically a laptop computer. According to the very testimony he quotes, however, laptop computers were not provided to *any* of the current sales representatives at the time in question. The current sales representatives used desktop computers, and because Rutter's did not have extra desktops lying around, it was only those newly-hired sales representatives that received laptops. (Doc. 30, p. 10.)

Finally, while Mummert stresses that his suspension notice underwent several edits before it was finalized, none of the edits or non-final versions of the notice suggest pretext or a discriminatory motive. For example, early versions of the notice stated that even Mummert's co-workers who considered themselves to be his friend were tired of his negative attitude and were asking for relief. (*See* Doc. 29-3, pp. 38, 46.) One version characterized Mummert's behavior in this regard as harassment, while another version stated that his behavior could be considered harassment. (*Id*.)

The references to Mummert's close co-workers and potential harassment were ultimately omitted from the final suspension notice. (*See* Doc. 28-5, pp. 72-73.) Other changes to the final version included the omission of a suggestion, found in earlier versions, that Mummert seek professional assistance with his purported issues, as well the addition of a note that the notice was a "2nd occurrence" because the same issues had been addressed with Mummert at his August 2016 review. (*See id.* p. 72.) Nothing about these changes casts doubt on Defendants' proffered reasons for imposing the suspension and none suggest that Defendants acted with a discriminatory motive. In sum, Mummert does not point to any evidence showing that Rutter's articulated reasons for disciplining him were a pretext for age or disability discrimination. As such, he has not satisfied his burden of production under the *McDonnell Douglas* framework with respect to any of his discrimination claims. Defendants are therefore entitled to summary judgment on Mummert's claims for age and disability discrimination.

Mummert's retaliation claims, each of which allege that Defendants retaliated against him for taking FMLA leave, fare no better. To establish a prima facie retaliation claim under the ADA, the plaintiff must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). As with discrimination claims, the defendant-

employer may rebut the prima facie case by articulating a legitimate reason for its adverse employment action, which shifts the burden back to the employee to show that the reason is pretext. *Id.* at 500-01. The same standard applies to PHRA retaliation claims, "except where there is something specifically different in its language requiring that it be treated differently." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002). Neither party argues that there is any relevant difference between the claims in this case.

Claims for retaliation under the FMLA, which prohibits an employer from retaliating against an employee for asserting rights under the FMLA, are also analyzed under the *McDonnell Douglas* burden-shifting framework. *See* 29 U.S.C. § 2615(a)(2); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). To prevail on a claim for retaliation under the FMLA, the plaintiff must show that he invoked his right to FMLA-qualifying leave, that he suffered an adverse employment decision, and that the adverse action was causally related to the invocation of rights. *Lichtenstein*, 691 F.3d at 301–02. As discussed above, if the plaintiff satisfies a prima facie claim, the burden shifts to the employer to articulate a non-retaliatory reason for its action, which then shifts the burden back to the employee to show that the employer's justification is pretext. *Id.* at 309-10.

Assuming that Mummert can establish a prima facie claim based on his FMLA leave, his retaliation claims fail for the same reasons as his discrimination claims: Defendants have articulated legitimate reasons for each of their employment

decisions and Mummert has not raised an issue of fact as to whether any of those reasons are pretext. Mummert does not meaningfully dispute the substance of the complaints received by Defendants. As with his discrimination claims, his arguments in support of pretext rely on the broader record assessed above—including the email from Miller to Mr. Rutter regarding a communication about Mummert's absence, Rutter's failure to provide Mummert a laptop computer and anger management training, Mummert's testimony about comments made by Miller and Rutter, and changes made to Mummert's suspension notice—which neither undermines Defendants' proffered reasons nor suggests a retaliatory motive for any of its decisions.

Finally, while a plaintiff may also pursue an FMLA retaliation claim under a mixed-motive theory by claiming that the employer's decision was based on both legitimate and illegitimate reasons, *see Egan v. Delaware River Port Auth.*, 851 F.3d 263, 268 n.1 (3d Cir. 2017), Mummert's amended complaint and brief in opposition to summary judgment only advance a pretext theory. (*See* Doc. 10, ¶¶ 126, 131; Doc. 30, p. 27.) Even still, Defendants would be entitled to summary judgment under this less-stringent framework as well. "[A]n employee who claims retaliation and seeks to proceed under a mixed-motive approach" must ultimately demonstrate "that his or her use of FMLA leave was 'a negative factor' in the employer's adverse employment action." *Egan*, 851 F.3d at 272. Mummert has not produced any evidence that his legitimate use of FMLA was a factor in any of Defendants'

employment decisions. Defendants disciplined and ultimately terminated Mummert only after receiving repeated and consistent complaints from his customers and colleagues, the basis of which Mummert has never substantively contested. Mummert presents no credible evidence that Defendants ever questioned his need for medical leave or gave him any kind of hard time for requesting or taking that leave. Nor has Mummert introduced any evidence to indicate that in reaching their employment decisions, Defendants considered anything other than his job performance and the complaints that were received. Even construing the record in a light most favorable to Mummert, a reasonable factfinder could not find or infer that Mummert's use of FMLA leave was more likely than not a motivating factor in any of Defendants' employment decisions. Accordingly, Defendants are entitled to summary judgment on each of Mummert's retaliation claims.

## IV. **CONCLUSION**

For the reasons set forth above, the motion for summary judgment filed by Defendants Rutter Bros. Dairy Inc. and Ricky Miller will be granted and Plaintiff Michael J. Mummert's claims will be dismissed with prejudice. An appropriate order shall follow.

s/Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge

Dated: July 1, 2021